MCKINNON v. CV INDUS., INC.

[228 N.C. App. 190 (2013)]

BOBBY E. MCKINNON, Plaintiff
v.
CV INDUSTRIES, INC., Defendant

No. COA12-1165

Filed 2 July 2013

1. **Pleadings—Rule 11—motion for attorney fees—denied**

    The trial court correctly denied plaintiff's motion for attorney fees under N.C.G.S. § 1A-1, Rule 11 in an action arising from plaintiff's departure from defendant's business and plaintiff's new business activities. Plaintiff's motion concerned defendant's counterclaim for breach of the severance agreement, which was dropped after plaintiff's reply referred to a letter releasing plaintiff from his agreement concerning certain patents. There were findings that the counterclaim was based on the company files and the severance agreement, that the letter had been forgotten, and those findings supported the trial court's conclusion.

2. **Appeal and Error—preservation of issues—passing reference**

    Plaintiff abandoned issues concerning attorney fees under N.C.G.S. § 6-21.5 and N.C.G.S. § 1D-45 by making only a passing reference to those statutes in this brief rather than a specific argument.

3. **Appeal and Error—preservation of issues—no specific argument**

    Defendant abandoned a challenge to the trial court's refusal to award attorney fees under N.C.G.S. § 1A-1, Rule 11 where defendants' briefs did not contain specific arguments challenging that determination.

4. **Attorney Fees—incurred on appeal—not supported by statute**

    N.C.G.S. § 6-21.5 may only encompass attorney fees incurred at the trial level and could not support an award of attorney fees incurred in an appeal.

5. **Attorney Fees—findings—not sufficient**

    An award of attorney fees under N.C.G.S. § 76-16.1(2) was remanded where the facts could be sufficient to award attorney fees, but the trial court did not make specific findings that the action was specific and malicious or on the reasonableness of the award.

MCKINNON v. CV INDUS., INC.

[228 N.C. App. 190 (2013)]

**6. Costs—miscalculated—remanded**

An award of costs under N.C.G.S. § 6-20 was remanded where the court miscalculated the costs in a portion of its order.

Appeal by plaintiff and cross-appeal by defendant from order entered 11 June 2012 by Judge James L. Gale in Catawba County Superior Court. Heard in the Court of Appeals 26 February 2012.

*C. Gary Triggs, P.A., by C. Gary Triggs, for plaintiff-appellant.*

*Parker Poe Adams & Bernstein LLP, by William L. Rikard, Jr. and James C. Lesnett, Jr., for defendant-appellee.*

DAVIS, Judge.

Plaintiff Bobby E. McKinnon ("plaintiff" or "McKinnon") appeals from the trial court's order denying his motion for attorney's fees and awarding attorney's fees and costs to defendant CV Industries, Inc. ("defendant" or "CVI"). Defendant cross-appeals. After careful review, we affirm in part and remand in part.

**Factual Background**

This case is before this Court for the second time. The facts surrounding this action are set out more fully in *McKinnon v. CV Indus., Inc.,* ___ N.C. App. ___, 713 S.E.2d 495 (2011) (*"McKinnon I"*) but are summarized in pertinent part as follows:

CVI is a holding company comprised of Century Furniture, LLC ("Century") and Valdese Weavers, LLC ("Valdese"). Plaintiff is a former employee of CVI. He became president of Valdese in 1978 and continued in various managerial and executive capacities for CVI and its subsidiaries throughout his career. Plaintiff was serving as the president and CEO of CVI in 2000 when he announced his decision to resign in order to pursue a career opportunity at Joan Fabrics and Mastercraft.

After plaintiff announced his resignation, plaintiff and CVI negotiated a severance agreement entitling plaintiff to benefits from certain incentive plans that he had obtained throughout the course of his employment with CVI. Plan A of the severance agreement provided plaintiff with a type of benefits known as shadow equity benefits "once he disengaged from continuous competition with CVI, as long as CVI's ESOP [Employee Stock Ownership Program] stock price exceeded its 31 December 1999 price of $9.90 per share [on the date plaintiff

stopped competing with CVI]." *McKinnon I,* ___ N.C. App. at ___, 713 S.E.2d at 498.

The severance agreement also required plaintiff to refrain from acquiring the patents or research of Frank Land ("Land"), who was developing a fire-resistant yarn funded by Valdese. When Valdese discontinued funding for Land's research in October 2001, Land approached plaintiff about a potential joint business venture. Plaintiff requested — and obtained — a letter from CVI dated 20 November 2001 releasing him from his agreement to refrain from acquiring Land's patents or research. He then resigned from his position to begin a joint venture with Land in late 2001.

On 23 June 2008, plaintiff notified defendant that he intended to withdraw from continuous competition with CVI and acquire his Plan A benefits. Back in March 2002, CVI had hired outside auditors to examine its financial statements. The auditors determined at that time that defendant "no longer needed to categorize Plaintiff's Plan A benefits as a liability, since, after leaving Joan Fabrics, Plaintiff was no longer in continuous competition with CVI and at that time CVI's ESOP price had not exceeded its 31 December 1999 value." *Id.* at ___, 713 S.E.2d at 499. CVI, therefore, sent plaintiff a letter informing him that it did not owe him the Plan A benefits because plaintiff had previously ceased competition with CVI at a time when CVI's stock price was below its 31 December 1999 value.

On 11 March 2009, plaintiff filed a complaint in Catawba County Superior Court alleging that by failing to pay him the Plan A benefits under his severance agreement, defendant had (1) breached its contract with plaintiff; (2) engaged in fraud and misrepresentation; and (3) engaged in unfair and deceptive practices in violation of N.C. Gen. Stat. § 75-1.1 ("Chapter 75") based on fraud and misrepresentation. The matter was designated a complex business case and assigned to the Honorable Ben F. Tennille.

Defendant filed an answer denying plaintiff's allegations along with a counterclaim alleging that plaintiff had breached the severance agreement by acquiring patents owned by Land. Plaintiff submitted a reply in response to the counterclaim in which he referenced the 20 November 2001 letter releasing him from his agreement to forego acquiring Land's patents. Defendant subsequently filed an amended answer omitting its counterclaim.

After the parties engaged in discovery, defendant filed a motion for summary judgment with respect to all of plaintiff's claims, and the motion was granted in its entirety by Judge Tennille. Plaintiff appealed, and this Court affirmed Judge Tennille's order in *McKinnon I*. Plaintiff

**MCKINNON v. CV INDUS., INC.**

[228 N.C. App. 190 (2013)]

then filed a petition for discretionary review with the Supreme Court of North Carolina, which was denied. *McKinnon v. CV Indus., Inc.*, 365 N.C. 353, 718 S.E.2d 376 (2011).

Both plaintiff and defendant subsequently filed motions in the trial court to recover attorney's fees and costs. After a hearing on the parties' cross-motions, the Honorable James L. Gale[1] issued an order on 11 June 2012 (1) denying plaintiff's motion for attorney's fees; (2) awarding CVI $40,000 in attorney's fees for fees incurred after Judge Tennille's entry of summary judgment; and (3) awarding CVI costs totaling $16,798.36. Both parties appealed Judge Gale's order.

## Analysis

### I. Denial of Attorney's Fees to Plaintiff

**[1]** Plaintiff contends that the trial court erred in determining that he was not entitled to attorney's fees pursuant to (1) Rule 11 of the North Carolina Rules of Civil Procedure; (2) N.C. Gen. Stat. § 1D-45; or (3) N.C. Gen. Stat. § 6-21.5.

### A. Rule 11

Rule 11 states, in pertinent part, as follows:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. . . . The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry that it is well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

N.C. R. Civ. P. 11(a). If a pleading, motion, or paper is signed in violation of Rule 11, "the court, upon motion or upon its own initiative, shall impose . . . an appropriate sanction, which may include an order to pay the other party . . . reasonable expenses . . . including a reasonable attorney's fee." *Id.*

---

1. Upon Judge Tennille's retirement, the case was reassigned to Judge Gale.

It is well established that analysis under Rule 11 is three-pronged, requiring the trial court to determine whether the pleading, motion, or paper is (1) factually sufficient; (2) legally sufficient; and (3) not filed for an improper purpose. *In re Will of Durham*, 206 N.C. App. 67, 71, 698 S.E.2d 112, 117 (2010). "A violation of any one of these requirements mandates the imposition of sanctions under Rule 11." *Dodd v. Steele*, 114 N.C. App. 632, 635, 442 S.E.2d 363, 365, *disc. review denied*, 337 N.C. 691, 448 S.E.2d 521 (1994).

Factual sufficiency is determined by conducting a two-step inquiry, whereby the court examines "(1) whether the plaintiff undertook a reasonable inquiry into the facts and (2) whether the plaintiff, after reviewing the results of his inquiry, reasonably believed that his position was well grounded in fact." *McClerin v. R-M Indus., Inc.*, 118 N.C. App. 640, 644, 456 S.E.2d 352, 355 (1995).

Legal sufficiency also involves a two-step analysis. First, the court must ask if the pleading or motion is facially plausible. *Mack v. Moore*, 107 N.C. App. 87, 91, 418 S.E.2d 685, 688 (1992). If so, "the inquiry is complete, and sanctions are not proper." *Id.* If the document is not facially plausible, the trial court must then ask "(1) whether the alleged offender undertook a reasonable inquiry into the law, and (2) whether, based upon the results of the inquiry, [he] formed a reasonable belief that the paper was warranted by existing law, judged as of the time the paper was signed." *Id.* "Rule 11 sanctions are appropriate where the offending party either failed to conduct a reasonable inquiry into the law or did not reasonably believe the paper was warranted by existing law." *Ward v. Jett Props., LLC*, 191 N.C. App. 605, 608, 663 S.E.2d 862, 864 (2008).

Finally, the trial court must determine whether the pleading or motion was filed for an improper purpose. "An improper purpose is any purpose other than one to vindicate rights . . . or to put claims of right to a proper test." *Mack*, 107 N.C. App. at 93, 418 S.E.2d at 689 (citation and quotation marks omitted).

Our Supreme Court has articulated the following standard of appellate review of a trial court's ruling on a Rule 11 motion:

> The trial court's decision to impose or not to impose mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a) is reviewable *de novo* as a legal issue. In the *de novo* review, the appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination,

(2) whether the trial court's conclusions of law are sup-
ported by its findings of fact, and (3) whether the findings
of fact are supported by a sufficiency of the evidence. If
the appellate court makes these three determinations in
the affirmative, it must uphold the trial court's decision
to impose or deny the imposition of mandatory sanctions
under N.C.G.S. § 1A-1, Rule 11(a).

*Turner v. Duke Univ.*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989).

Plaintiff contends that Rule 11 sanctions were appropriate in this
case because CVI "knew or by reasonable diligence should have known
of the existence of the [20 November 2001] letter specifically authorizing
the involvement of the Plaintiff with Land." Plaintiff argues that CVI's
counterclaim against him was frivolous and caused him to incur sub-
stantial legal expenses in combating defendant's assertions. The trial
court determined that Rule 11 sanctions against CVI were not mandated
based on the following findings of fact:

[49] CVI admits that the letter existed but was not found
prior to the counterclaim being filed. CVI's Chief Financial
Officer, Richard Reese, stated in his deposition that he
reviewed the Agreement and searched his files relating
to McKinnon prior to filing the counterclaim. [Alexander]
Shuford, the author of the letter to McKinnon, also stated
in his deposition that he did not recall the letter as it had
been written several years prior. Not having found anything
releasing McKinnon from the clause in the Agreement
prohibiting him from working with the Land Patent after
reviewing files, CVI filed the counterclaim believing it had
a basis to do so. The court concludes that CVI made a rea-
sonable inquiry into the facts supporting their breach of
contract counterclaim.

[50] The counterclaim does not fail the legal sufficiency
standard. It is plausible on its face. But for the letter,
McKinnon's involvement with the Land Patent would
plainly support a claim for breach of contract.

[51] There is no evidence to support a finding that CVI filed
its counterclaim for any improper purpose. The prompt
dismissal after notice of the letter suggests otherwise.

These findings of fact are supported by competent evidence in
the record. In his deposition, Reese, the chief financial officer of CVI,

testified that after reviewing his files and plaintiff's severance agreement, he based the counterclaim on the information contained therein — namely, the provision in the severance agreement forbidding plaintiff from acquiring Land's patents or research. Shuford, the current president and chief executive officer of CVI and the author of the 20 November 2001 letter, was also deposed. He testified that he had forgotten that the letter existed because it had been written eight or nine years earlier. He further testified that CVI "would not have filed the [counterclaim] if he — if we had known that letter was in existence." Furthermore, it is undisputed that upon plaintiff's filing of a reply to the counterclaim in which plaintiff referenced the 20 November 2001 letter from Shuford, defendant promptly filed an amended answer omitting the counterclaim.

We conclude that findings of fact 49-51 support the trial court's conclusions that defendant's counterclaim was (1) factually sufficient; (2) legally sufficient; and (3) not filed for an improper purpose. Moreover, these findings are based on competent evidence in the record. Accordingly, we affirm the trial court's denial of plaintiff's motion for attorney's fees under Rule 11.

### B. N.C. Gen. Stat. § 6-21.5 and N.C. Gen. Stat. § 1D-45

[2] While attorney's fees may, in appropriate circumstances, also be awarded pursuant to N.C. Gen. Stat. § 6-21.5 and N.C. Gen. Stat. § 1D-45, the trial court declined to award such fees to plaintiff under either of these statutory provisions. Although plaintiff makes a passing reference to these statutes in his brief, he makes no specific argument that the trial court erred in denying his motion for attorney's fees under them. We therefore deem these issues abandoned. *See Piles v. Allstate Ins. Co.,* 187 N.C. App. 399, 402 n.2, 653 S.E.2d 181, 184 n.2 (2007) (treating issue referenced in brief but not argued as abandoned), *disc. review denied,* 362 N.C. 361, 663 S.E.2d 316 (2008); N.C. R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.")

### II. Award of Attorney's Fees and Costs to Defendant

[3] Plaintiff and defendant both raise arguments on appeal regarding the trial court's award to defendant of $40,000 in attorney's fees. Plaintiff argues that the trial court erred in awarding any attorney's fees at all to CVI. Defendant, conversely, claims that the trial court abused its discretion both in (1) limiting its recoverable attorney's fees solely to those incurred after the entry of summary judgment by Judge Tennille; and (2) awarding a sum substantially less than the total amount of attorney's fees incurred by CVI after summary judgment was entered.

## MCKINNON v. CV INDUS., INC.

[228 N.C. App. 190 (2013)]

In *McKinnon I*, we determined that the trial court properly granted defendant's motion for summary judgment as there were no genuine issues of material fact relating to any of plaintiff's claims against CVI. ___ N.C. App. at ___, 713 S.E.2d at 500. Specifically, we held that plaintiff was no longer "competing" with CVI when he began his business venture with Land because competition "entail[s] more than mutual existence in a common industry or marketplace; rather, it requires an endeavor among business entities to seek out similar commercial transactions with similar clientele." *Id.* at ___, 713 S.E.2d at 501.

Plaintiff's and Land's companies produced flame-resistant yarn for fabric manufacturing, and their clientele was made up of yarn and fabric manufacturers. CVI, conversely, produced jacquard fabric and finished furniture, and their clients consisted of furniture manufacturers and consumers. *Id.* at ___, 713 S.E.2d at 502. Thus, we concluded that "Plaintiff and CVI were not in competition as they did not seek to sell similar goods or provide similar services to similar clientele." *Id.* at ___, 713 S.E.2d at 502. As such, plaintiff was not entitled to the Plan A benefits because he had ceased continuous competition with defendant at a time when the stock price was below its 31 December 1999 value.

In its motion for attorney's fees and costs, defendant contended that an award of attorney's fees in its favor pursuant to Rule 11 was warranted because plaintiff's assertion that he was in continuous competition with CVI until 2008 was factually and legally baseless.

Although it characterized its decision as "a close call," the trial court ultimately declined to award sanctions under Rule 11. Defendant's briefs to this Court do not contain specific arguments challenging Judge Gale's determination under Rule 11, and we therefore deem that issue abandoned. N.C. R. App. P. 28(b)(6). The trial court determined, however, that an award of attorney's fees to defendant was appropriate under either N.C. Gen. Stat. § 6-21.5 or N.C. Gen. Stat. § 75-16.1 and explained its award using both statutory frameworks. Accordingly, we must analyze defendant's entitlement to attorney's fees under both of these statutes.

### A. N.C. Gen. Stat. § 6-21.5

[4] When reviewing an award of attorneys' fees under section 6-21.5, this Court must review all relevant pleadings and documents of a case in order to determine if either: (1) the pleadings contain a complete absence of a justiciable issue of either law or fact, or (2) whether the losing party persisted in litigating the case after a point where he should reasonably

have become aware that the pleading he filed no longer contained a justiciable issue.

*Credigy Receivables, Inc. v. Whittington,* 202 N.C. App. 646, 652, 689 S.E.2d 889, 893 (2010) (citation and quotation marks omitted).

In its order, the trial court determined that the award of attorney's fees to defendant became appropriate only after plaintiff continued to pursue this litigation after the entry of summary judgment against him. The trial court, therefore, purported to base its award on fees that were incurred by defendant (1) in connection with plaintiff's first appeal to this Court in *McKinnon I;* and (2) in opposing plaintiff's ensuing petition for discretionary review by the Supreme Court.

We have previously held, however, that the application of N.C. Gen. Stat. § 6-21.5 is "confined to the trial division" and that, consequently, awards of attorney's fees pursuant to § 6-21.5 may *only* encompass fees incurred at the trial level. *Hill v. Hill,* 173 N.C. App. 309, 321, 622 S.E.2d 503, 511 (2005) (holding that trial court committed reversible error in awarding attorney's fees pursuant to § 6-21.5 that were incurred by prevailing party in connection with plaintiff's prior appeal), *appeal dismissed and disc. review denied,* 360 N.C. 363, 629 S.E.2d 851 (2006). For this reason, we conclude that § 6-21.5 cannot support the trial court's award of attorney's fees to defendant on these facts.

## B. N.C. Gen. Stat. § 75-16.1

[5] We next determine whether the award of attorney's fees was appropriate under the trial court's alternate statutory basis — N.C. Gen. Stat. § 75-16.1. N.C. Gen. Stat. § 75-16.1 authorizes an award of attorney's fees to the prevailing party in a suit alleging a Chapter 75 violation[2] if the trial court finds that either:

(1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such a party to fully resolve the matter which constitutes the basis of such suit; or

(2) The party instituting the action knew, or should have known, the action was frivolous and malicious.

N.C. Gen. Stat. § 75-16.1(1)-(2) (2011).

---

2. While plaintiff asserted claims against defendant on several different theories, an award of attorney's fees pursuant to § 75-16.1 would apply only to plaintiff's Chapter 75 claim.

In the present case, the trial court's award was issued pursuant to § 75-16.1(2). As quoted above, this statutory provision allows a trial court to award attorney's fees to a prevailing defendant if the plaintiff knew, or should have known, the action was frivolous and malicious. N.C. Gen. Stat. § 75-16.1(2). "A claim is frivolous if a proponent can present no rational argument based upon the evidence or law in support of [it]. A claim is malicious if it is wrongful and done intentionally without just cause or excuse or as a result of ill will." *Blyth v. McCrary*, 184 N.C. App. 654, 663 n.5, 646 S.E.2d 813, 819 n.5 (2007) (internal citations and quotation marks omitted).

Unlike N.C. Gen. Stat. § 6-21.5, application of N.C. Gen. Stat. § 75-16.1 is not confined solely to the trial level, and a trial court may award attorney's fees under § 75-16.1 for "services rendered at all stages of the litigation[,]" including appeals. *Shepard v. Bonita Vista Prop., L.P.*, 191 N.C. App. 614, 627, 664 S.E.2d 388, 396 (2008) (citation and quotation marks omitted), *aff'd per curiam*, 363 N.C. 252, 675 S.E.2d 332 (2009).

> The decision whether or not to award attorney fees under section 75-16.1 rests within the sole discretion of the trial [court]. And if fees are awarded, the amount also rests within the discretion of the trial court . . . . *However, when awarding fees pursuant to N.C. Gen. Stat. § 75-16.1, the court must make specific findings of fact* . . . .

*Blankenship v. Town & Country Ford, Inc.*, 174 N.C. App. 764, 771, 622 S.E.2d 638, 643 (2005) (emphasis added).

If, as here, the defendant is the prevailing party, the trial court must make findings that (1) the plaintiff "knew, or should have known, the action was frivolous and malicious"; and (2) the attorney's fee awarded is reasonable. N.C. Gen. Stat. § 75-16.1(2). *See Birmingham v. H & H Home Consultants & Designs, Inc.*, 189 N.C. App. 435, 443, 658 S.E.2d 513, 519 (2008) ("The standard for awarding attorney's fees under N.C. Gen. Stat. § 75-16.1(2) is that the plaintiff 'knew or should have known, the action was frivolous and malicious.' "); *Barbee v. Atl. Marine Sales & Serv., Inc.*, 115 N.C. App. 641, 648, 446 S.E.2d. 117, 122 (holding that when awarding attorney's fees under § 75-16.1 "[t]he court must make specific findings of fact . . . that the attorney's fee was reasonable"), *disc. review denied*, 337 N.C. 689, 448 S.E.2d 516 (1994).

Based on our review of the record, we agree that the facts presented here could be sufficient to support an award of attorney's fees under § 75-16.1(2). However, the trial court's order did not make specific findings — as it was required to do under § 75-16.1 — that plaintiff knew

or should have known that the action was frivolous and malicious. *Birmingham*, 189 N.C. App. at 443, 658 S.E.2d at 519.

Judge Gale's order noted that Judge Tennille had (1) "cautioned McKinnon that he was exposed to potential attorneys' fees by continuing to pursue a Chapter 75 claim when the only nexus to 'commerce' was the Agreement formed between a company and its employee"; and (2) determined that summary judgment was appropriate because Chapter 75 "does not reach 'conduct solely related to the internal operation of a single business.'"

Judge Gale further noted in his findings that (1) "[u]nquestionably . . . McKinnon was seeking to sail on a slender reed" and that "the claim for promissory fraud [upon which the Chapter 75 claim was based] was clearly a strained and weak one when it was first filed"; and (2) despite "being given every opportunity to do so through the summary judgment process, McKinnon could marshal no evidence that even colorably supported a promissory fraud or Chapter 75 claim." While these findings may be sufficient to support an ultimate finding that plaintiff knew or should have known that his Chapter 75 claim against defendant was frivolous and malicious, the trial court's order lacks such an ultimate finding.

Furthermore, in addition to lacking a finding on the ultimate issue of whether plaintiff knew or should have known that his Chapter 75 claim was frivolous and malicious, the order also lacks the requisite findings of fact regarding the reasonableness of the award. In order for this Court to review whether a trial court's award of attorney's fees was reasonable, the trial court must make findings supporting its award, including "findings regarding the time and labor expended, the skill required to perform the services rendered, the customary fee for like work, and the experience and ability of the attorney." *Shepard*, 191 N.C. App. at 626, 664 S.E.2d at 396 (citation and quotation marks omitted). "Failure to make findings of fact requires remand in order for the trial court to resolve any disputed factual issues [unless] the record reveals no evidence to support an award [under § 75-16.1]." *Blyth*, 184 N.C. App. at 664, 646 S.E.2d at 820 (citation and quotation marks omitted).

Here, the trial court's finding explaining its award of $40,000 in attorney's fees merely stated that

> [t]he court has carefully reviewed the time and extent of CVI's legal expenses. While the amount awarded is substantially less than the $322,151.07 CVI seeks . . . the court in its discretion concludes that CVI should be awarded

$40,000 in fees. This again appears to be less than the amount CVI actually expended in defending the case after the entry of summary judgment.

The order does not address at all (1) the skill required to perform the services rendered; (2) customary fees for similar work; and (3) the experience or ability of defendant's attorneys. Furthermore, it addresses only superficially the time and labor actually expended by defendant's attorneys in defending the appeal in *McKinnon I*. "Without these findings, we are unable to determine the reasonableness of the trial court's award." *Printing Serv. of Greensboro, Inc. v. Am. Capital Grp., Inc.*, 180 N.C. App. 70, 82, 637 S.E.2d 230, 237 (2006), *aff'd per curiam*, 361 N.C. 347, 643 S.E.2d 586 (2007).

In concluding that the trial court's findings regarding the reasonableness of the award are insufficient and require remand, we are guided by our decisions in *Shepard* and *Printing Services of Greensboro*. In *Shepard*, we held that the findings contained in the trial court's order listing the hours expended by the prevailing party's counsel and stating that the award of attorneys' fees was reasonable "considering the time and labor expended, the skill required to perform the legal services that were rendered, and the experience and ability of [trial counsel]" were inadequate. *Shepard*, 191 N.C. App. at 626-27, 664 S.E.2d at 396. We directed the trial court to make more detailed findings regarding the reasonableness of the amount of fees awarded on remand – including findings as to the skill required to perform the legal services and the experience and ability of trial counsel. *Id.*

In *Printing Services of Greensboro*, we likewise remanded the trial court's order awarding attorney's fees for additional findings of fact as to the reasonableness of the award because the order's description of the prevailing party's attorney's hourly billing rates did not contain findings regarding the time actually expended, customary fees for like work, or the experience and ability of the party's attorney. *Printing Serv. of Greensboro*, 180 N.C. App. at 82, 637 S.E.2d at 237. As in *Shepard* and *Printing Services of Greensboro*, the trial court's order here must similarly be remanded in order for the trial court to make the requisite findings of fact regarding the reasonableness of the award of attorney's fees.

In sum, we conclude that (1) N.C. Gen. Stat. § 6-21.5 does not serve as a proper basis for the award of attorney's fees to defendant because that statute does not permit an award of fees incurred in connection with the appeal in *McKinnon I*; and (2) this case must be remanded for the trial court to (a) make an ultimate finding as to whether plaintiff

knew or should have known that the assertion — or continued prosecution after summary judgment was entered — of his Chapter 75 claim was frivolous and malicious so as to support the award of attorney's fees under N.C. Gen. Stat. § 75-16.1, and, if so, (b) make additional findings of fact concerning the reasonableness of the award of attorney's fees based on the criteria set out above.

## III. Award of Costs to Defendant

[6] In addition to awarding attorney's fees to defendant, the trial court also awarded costs pursuant to N.C. Gen. Stat.    § 6-20. Section 6-20 authorizes a trial court to award costs to a prevailing party — in the court's discretion — "subject to the limitations on assessable or recoverable costs set forth in G.S. 7A-305(d)." N.C. Gen. Stat. § 6-20 (2011). The expenses enumerated in § 7A-305(d) constitute a "complete and exhaustive" list. N.C. Gen. Stat. § 7A-305(d) (2011). Pursuant to these statutory provisions, the trial court awarded costs to defendant for expenses incurred in connection with deposition transcripts, transcripts of in-court proceedings, and mediator fees.

While we believe these costs are authorized under the above-referenced statutes, we note that the trial court appears to have made a mathematical miscalculation in its award of costs. It calculated awardable costs of $8,399.18 – an amount equal to the sum of $7,321.80 in court reporter fees for deposition transcripts, $377.38 in court reporter fees for the transcription of oral arguments, and $700 in mediator fees. Later, however, in the decretal portion of the order, the trial court ordered an award of $16,798.36 — a sum that is the total of $8,399.18, $7,321.80, $377.38, and $700. Thus, it appears that in this portion of the order, the trial court inadvertently treated the total allowable costs ($8,399.18) as a separate allowable cost rather than as the sum of each of the separately allowable costs. On remand, the trial court is directed to reexamine its calculation of costs accordingly.

### Conclusion

For the reasons stated above, we affirm the trial court's order in part and remand in part.

AFFIRMED IN PART; REMANDED IN PART.

Judges HUNTER and McCULLOUGH concur.