McKinnon v. CV Indus., Inc., 2013 NCBC 54.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| COUNTY OF CATAWBA | SUPERIOR COURT DIVISION |
| | 09 CVS 830 |

BOBBY E. McKINNON,

      Plaintiff,

  v.

CV INDUSTRIES, INC.,

      Defendant.

**ORDER**

{1}     THIS MATTER is now before the court on remand from the North Carolina Court of Appeals affirming in part and reversing in part this court's June 11, 2012 Order regarding cross-motions for the award of costs and attorney's fees.

*Wayne O. Clontz, for Plaintiff.*

*Parker, Poe, Adams & Bernstein LLP by William L. Rikard, Jr. and James C. Lesnett, Jr. for Defendant.*

Gale, Judge.

### MATTER BEFORE THE COURT

{2}     A statement of the facts and case history as related to the consideration of an award of attorney's fees is stated in the decision of the North Carolina Court of Appeals, ___ N.C. App. ___, 745 S.E.2d 343 (2013) and this court's June 11, 2012 Order, 2012 NCBC LEXIS 38 (N.C. Super. Ct. June 11, 2012) (hereinafter "2012 Order"). The facts and case history related to the underlying claims is stated in the prior North Carolina Court of Appeals opinion regarding Judge Tennille's grant of summary judgment, 213 N.C. App. 328, 713 S.Ed.2d 495 (2011) and Judge Tennille's June 3, 2010 Order granting summary judgment, http://www.ncbusinesscourt.net/TCDDotNetPublic/default.aspx?CID=3&caseNumber=09CVS830 (hereinafter "Summary Judgment Order").

{3}     The court incorporates without repeating its findings of fact stated in its 2012 Order.

{4}     The Court of Appeals affirmed the court's denial of attorney's fees and costs to Plaintiff.  The matter is then now before the court only on Defendant's request for costs and attorney's fees.

{5}     The 2012 Order awarded Defendant attorney's fees totaling $40,000 and costs in the total amount $16,798.36.  It is now apparent that the court inadvertently doubled the correct amount of $8,399.18 in its order.

{6}     Defendant intially requested the award of attorney's fees pursuant to N.C. R. Civ. P. 11, N.C. Gen. Stat. § 6-21.5, and N.C. Gen. Stat. § 75-16.1.  A request pursuant to Rule 11 is no longer before the court.

{7}     The 2012 Order recited that the court granted its award under Section 6-21.5, although it had merged its analysis of Defendant's request under Section 6-21.5 and Section 75-16.1, and would have awarded the same amount of attorney's fees if it had instead proceeded under Section 75-16.1. 2012 Order at *35, ¶ 70.  The court limited its award of attorney's fees to those incurred after the Summary Judgment Order.  2012 Order at *35, ¶ 69.

{8}     The Court of Appeals reversed the award of fees after the Summary Judgment Order to the extent that the award must rest on Section 6-21.5 which applies only to attorney's fees incurred in proceedings in the trial court. 745 S.E.2d at 349.  However, the Court of Appeals further opined that, upon proper findings, the court could award those attorney's fees under Section 75-16.1, which extends to proceedings before an appellate court.  The Court of Appeals acknowledged that the facts of the case could be sufficient to support an award under Section 75-16.1 but left necessary ultimate findings to support any such award to the court following remand. 745 S.E.2d at 350.

{9}     More specifically, in order to award fees under Section 75-16.1, this court "must make findings that (1) the plaintiff 'knew, or should have known, the action was frivolous and malicious'; and (2) the attorney's fee awarded is reasonable." *Id.*

{10}     The Court of Appeals further correctly noted the court's inadvertent doubling of the amount of allowable costs pursuant to N.C. Gen. Stat. § 6-20.  745 S.E.2d at 352.

{11}     Plaintiff contends that the Court of Appeals did not reverse the court's determination to limit the award of attorney's fees to after the Summary Judgment Order and that this precludes any further consideration of an award of attorney's fees incurred at an earlier date.  Plaintiff further contends no award should be made under Section 75-16.1 because his claim under Section 75-1.1 was neither frivolous nor malicious.

{12}     Defendant contends that the Court of Appeals leaves open the court's ability to revisit an award for proceedings before the trial court under either Section 6-21.5 or Section 75-16.1 and, in fact, invited or directed this court to consider the claim under Section 75-16.1 at a point earlier that the entry of summary judgment. Defendant points to the Court of Appeals statement that "this case must be remanded to (a) make an ultimate finding as to whether plaintiff knew or should have known that the assertion – or continued prosecution after summary judgment was entered – of his Chapter 75 claim was frivolous and malicious so as to support the award of attorney's fees under N.C. Gen. Stat. § 75-16.1[.]"  745 S.E.2d at 351.

{13}     For reasons explained below, the court determines in its discretion that it should limit any award of attorney's fees to a date after the Summary Judgment Order.  As such, its consideration is limited to determining whether Plaintiff knew or should have known that his claim under Section 75-1.1 was on and after that date frivolous and malicious within the meaning of Section 75-16.1, and if so, the amount of reasonable attorney's fees that should be awarded.

{14}     The court concludes that Plaintiff knew or should have known at least by the date of entry of the Summary Judgment that his action under Section 75-1.1 was frivolous and malicious within the meaning of Section 75-16.1, and that Defendant is entitled to an award of reasonable attorney's fees in the amount of $57,891 and costs of $8,399.18.

ANALYSIS AND FINDINGS OF FACT

{15}   Plaintiff's Section 75-1.1 claim, among other elements, required (1) that there be an underlying unfair or deceptive act or practice; and (2) that this practice was "in and affecting commerce." Section 75-1.1(a). Plaintiff rested his Section 75-1.1 claim on his assertion that Defendant entered into Part A of Plaintiff's Severance Agreement with fraudulent intent. This assertion depends upon proof that Defendant had no intention of performing Part A at the time the contract was entered. A subsequent decision not to perform under the contract might support an action for breach of the contract, but the fraud claim cannot be proven if the intent not to perform arose only after the contract had been entered into. *Hoyle v. Bagby,* 253 N.C. 778, 781, 117 S.E.2d 760, 761 (1961); *Williams v. Williams,* 220 N.C. 806, 810-11, 18 S.E.2d 364, 366-67 (1942).

{16}   Plaintiff never developed any evidence to support fraudulent intent at the time the contract was entered into. He has been unable to demonstrate any such probative evidence even after remand.

{17}   At the Case Management Conference held on August 26, 2009, Judge Tennille further cautioned Plaintiff that he was exposed to the award of attorney's fees upon an unsuccessful pursuit of his Chapter 75 claim, and more specifically that the evidence would likely not show the prerequisite effect on interstate commerce.

{18}   After a full course of discovery, Judge Tennille granted summary judgment on Plaintiff's Section 75-1.1 claim on two independent grounds. First, Judge Tennille concluded that, "[t]he factual record [was] devoid of any evidence indicating that CVI did not intend to honor the Plan A provisions at the time it entered into the Agreement." Summary Judgment Order at ¶¶ 36-38. Second, he concluded that Plaintiff had failed to produce any evidence that the Severance Agreement affected interstate commerce. *Id.* at ¶¶ 40-44.

{19}   As to the breach of contract claim, Judge Tennille further found, and the Court of Appeals affirmed his finding, that there was no competent evidence that Plaintiff was in "competition" with Defendant at critical times. Following

entry of summary judgment, Plaintiff has consistently and fervently argued that he had a good faith basis to assert that Plaintiff was in "competition," and that he had probative evidence, including Plaintiff's testimony and supporting affidavits sufficient to proceed. He claims that it would be particularly egregious for the court to conclude that his breach of contract claim was frivolous or malicious when the contract itself did not define the term "competition." He asserts that to conclude otherwise would improperly sanction a party for pursuing a good faith claim simply because he ultimately does not prevail.

{20} Whether or not this argument has force in connection with the breach of contract claim, it gets no traction in defense of an award based on the Section 75-1.1 claim. That claim was deficient for reasons beyond the dispute whether Plaintiff remained in "competition." This court acknowledges and has at all times been sensitive to Plaintiff's argument about an unwarranted chilling effect on a party's ability to present a colorable claim. The court's limitation of fees to those incurred after the Summary Judgment Order reflects such a sensitivity, and perhaps an oversensitivity which, in fact, unfairly punishes Defendant. But the dispute about whether or not there was "competition" only animates the argument as to whether a claim was stated sufficiently to proceed to trial for breach of contract. The Chapter 75 claim required more. Plaintiff has never, even now, been able to articulate a reasonable evidentiary basis on which one could conclude that Defendant had no intent to perform Part A of the Severance Agreement when it entered the contract. Evidence that it later decided not to perform under that agreement does not prove the essential element of fraudulent intent.

{21} Judge Tennille, the Court of Appeals, and this court have given Plaintiff adequate opportunity to point to evidence supporting a finding that Defendant entered the Severance Agreement with no intent to perform. Plaintiff has failed to do so at every turn. Consistently, Plaintiff points only to conduct *after* the contract formation, with his greatest emphasis on the fact that Defendant, on accountant's advice, later removed a contingent liability off its books without notice to Plaintiff. It is clear that Plaintiff did not, at the time of entry of the Summary

Judgment Order, have any colorable basis to assert that Defendant had a fraudulent intent when entering the Severance Agreement. Plaintiff knew or should have known that there was no basis for the further pursuit of that claim.

{22} While the court believes that the record could support a finding that Plaintiff knew that claim was without basis when the claim was first initiated, thus supporting a much more significant award of attorney's fees, after careful consideration, and with some reluctance, the court adheres to its decision to limit the award of attorney's fees after the entry of the Summary Judgment Order. The court does not read the Court of Appeals opinion to mandate otherwise. While the court has been duly sensitive in the potential to chill the pursuit of legitimate claims, the court should likewise be diligent in guarding against an abusive use of the breadth and exposure of Section 75-1.1. Balancing those interests to confine the award of attorney's fees to after entry of the Summary Judgment Order was a close call just as was the court's earlier decision not to grant relief under Rule 11.

{23} But the question of whether Plaintiff should have abandoned his Section 75-1.1 claim after the Summary Judgment Order is not a close call. Plaintiff did not just fail to prevail on that claim. He was unable after being given a full course of discovery to point to any evidence at all upon which a claim based on fraudulent intent could have been submitted to the jury. Whether or not Plaintiff continued to believe he had an objective or subjective basis to assert he had been in "competition" at relevant times, he had no such reasonable basis, objective or subjective, to assert that he could prove Defendant entered the Severance Agreement with fraudulent intent.

{24} Having pursued the Section 75-1.1 claim beyond that point, with its threat of treble damages, Plaintiff is fairly charged with the consequences of his having done so. Clearly, Plaintiff cannot claim surprise. Defendant has sought an award of fees under Section 75-16.1 since the beginning of the litigation. Judge Tennille warned him of that potential at the early Case Management Conference before discovery began.

{25}    Plaintiff's pursuit of his Section 75-1.1 claim after the Summary Judgment Order was frivolous and malicious.  Plaintiff knew or should have known that it was frivolous and malicious.  This conclusion does not depend on whether Defendant's conduct complained of was in or affecting interstate commerce, although Judge Tennille found that this was a separate and independent reason why Plaintiff's Section 75-1.1 claim should be dismissed.  Summary Judgment Order ¶ 40.

{26}    Plaintiff's pursuit of his Section 75-1.1 unnecessarily complicated the case and increased the scope, necessity and expense of Defendant's defense.  Defendant should recover its entire reasonable attorney's fees incurred after the Summary Judgment Order, with no allocation of those fees to any other claim. In order to defend the Section 75-1.1 claim, Defendant was obligated to defend the breach of contract claim.  Defendant's appellate argument and briefing would have been substantially the same and would have required substantially the same effort if the appeal had been confined to the Section 75-1.1.

{27}    It is particularly appropriate that Defendant recover the full amount of fees incurred after the Summary Judgment Order where the court has elected not to award attorney's fees incurred for proceedings at the trial court, even though the record includes a basis adequate to support the court's discretion to such award under either Section 6-21.5 and Section 75-16.  The court has taken this into consideration in its discretionary determination to limit the award of fees under Section 75-16.1 to a date after the Summary Judgment Order.

{28}    Defendant has provided support indicating that its fees were reasonable, including affidavits of its lead counsel William Rikard filed November 22, 2011 and November 18, 2013 and the affidavit of Douglas W. Ey, Jr., a leading litigator in Mecklenburg County.  The court is familiar with Mr. Rikard and Mr. Ey, their skill and experience, and the respect and standing they maintain in the Bar.  Both regularly engage in complex civil litigation, including substantial matters before this court.

{29} The services performed by Parker Poe on behalf of Defendant in this litigation were highly skilled, reasonable and necessary.

{30} As Mr. Ey opined, and as the court is aware based on its own knowledge of billing rates in comparable litigation, the rates charged for the Parker Poe attorneys and legal assistants in their defense of the Chapter 75 claim were reasonable and well within if not below the range of such billing rates for comparable litigation.

{31} The efforts undertaken in the defense were appropriately allocated to and handled by appropriate personnel matched to the task at hand.

{32} Parker Poe attorneys and paralegals worked a total of 1,093.80 hours and billed $322,151.07 during the defense of the litigation. The requested fees do not include the further amount Defendant has incurred in seeking the recovery of its attorney's fees and costs.

{33} Parker Poe billed a total of $57,981 in defense after the Summary Judgment Order. This amount was appropriate, reasonable and necessary.

{34} Plaintiff unreasonably and without warrant refused to resolve and dismiss his Section 75-1.1 claim after having been given adequate opportunity to do so.

{35} Defendant incurred the following costs: court reporter fees of $7,321.80 for deposition transcripts, $377.38 for oral argument transcripts, and mediator fees of $700.00.

CONCLUSIONS OF LAW

{36} Plaintiff instituted an action under N.C. Gen. Stat. § 75-1.1 which Plaintiff knew or should have known no later than the entry of the Summary Judgment Order was frivolous and malicious. There was no colorable or justiciable basis to pursue that claim after that point in time.

{37} Defendant is the prevailing party on Plaintiff's Section 75-1.1 claim.

{38} The court has discretion to award attorney's fees to the prevailing party pursuant to N.C. Gen. Stat. § 75-16.1, which fees may include efforts both at the trial level and at the appellate level.

{39}   Defendant is entitled to an award of attorney's fees in the amount of $57,891, which amount is reasonable, and represent billings for work that was necessary and appropriate and matched to the nature and complexity of the matters at issue.

{40}   The court has discretion to award costs to the prevailing party pursuant to N.C. Gen. Stat. §§ 6-1, 6-20, which costs may include fees for expenses related to the taking of depositions, mediator fees, and transcript fees as provided by N.C. Gen. Stat. § 7A-305(d). Defendant is entitled to recover costs in the total amount of $8,399.18, representing court reporter fees of $7,321.80 for deposition transcripts, $377.38 for oral argument transcripts, and mediator fees of $700.00.

THEREFORE, based upon such Findings of Fact and Conclusions of Law, it is ORDERED that:

1. Pursuant to N.C. Gen. Stat. § 75-16.1 and in the court's discretion, CVI shall have and recover of Plaintiff attorney's fees in the total amount of $57,891;

2. Pursuant to N.C. Gen. Stat. § 6-20, Defendant shall have and recover of Plaintiff taxable costs of $8,399.18; and

3. Plaintiff shall therefore pay Defendant the total sum of $66,290.18 within thirty (30) days of the date of this Order.

IT IS SO ORDERED this 26th day of November, 2013.